IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JIMMY NORMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACT. NO. 2:23-cv-582-ECM |
| ) | [WO] |
| ELL WHITE III, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

On September 14, 2022, a group of inmates at Elmore Correctional Facility ("Elmore") threatened to kill Plaintiff Jimmy Norman ("Norman"), a fellow inmate at Elmore. Norman spent hours calling for a corrections officer to help, but none did. Defeated, Norman decided that he would rather commit suicide than be killed by fellow inmates. He climbed to the roof of Elmore's Chapel, where he sat until Defendant Ell White ("White"), a corrections officer at Elmore, allegedly grabbed him, dragged him off the ledge, and beat him senselessly, as captured on video.

Now, Norman sues White and Rolanda Calloway ("Calloway"), Warden III of Elmore, alleging a series of Eighth Amendment and state law violations. On March 29, 2024, Calloway moved to dismiss the complaint or, in the alternative, the claims against her. (Doc. 23). She claims entitlement to a variety of immunity doctrines and argues that Norman fails to state a plausible claim against her. On April 29, 2024, Norman responded.

(Doc. 28). The motion is briefed[1] and ripe for review. Upon consideration, the Court determines that the motion is due to be GRANTED.

## II. JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Norman's state law claims pursuant to 28 U.S.C. § 1367(a). Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(A)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At this stage of the proceedings, "the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016).

The determination of "whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

---

[1] Calloway failed to file a reply brief. She was ordered to do so by the Court. (*See* doc. 25 ("[T]he Defendant *shall file* a reply to the Plaintiff's response…" (emphasis added))).

experience and common sense." *Iqbal*, 556 U.S. at 679. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citation omitted).

## IV.  BACKGROUND

In ruling on Calloway's motion to dismiss, the Court accepts as true the well-pled facts of Norman's complaint. *See Iqbal*, 556 U.S. at 678.

### A.  The Events of September 14, 2022

On the morning of September 14, 2022, Norman, an inmate housed at Elmore who suffered from mental health issues, was approached by fellow inmates who were brandishing knives and warned Norman that there was a "contract on his life." (Doc. 9 at 3–4, paras. 8–10).[2] Fearing for his safety, Norman reported the threat to several officers who laughed him off and told him there was nothing they could do. (*Id.* at 4, paras. 11–12). Desperate, Norman sat outside the shift office for hours trying to get an officer's attention. (*Id.* at 4, para. 13). Once the evening shift officers arrived, Norman informed them of the threat against him. (*Id.* at 4, para. 14). Like the morning shift officers, they

---

[2] References to page numbers are those generated by the Court's CM/ECF electronic filing system.

told Norman there was nothing they could do. (*Id.*). Rather than be killed by his fellow inmates, Norman took matters into his own hands. (*Id.* at 5, paras. 16–17).

Norman climbed to the roof of Elmore's chapel intending to jump off and commit suicide. (*Id.* at 5, paras. 17–18). As Norman sat on the ledge, White wrapped a pair of handcuffs around his own hand, grabbed Norman by his collar, and hit him across his head and face several times. (*Id.* at 6, para. 21). In the meantime, Norman did not disobey or resist White in any way. (*Id.* at 6, para. 22). He tried to cover himself from White's forceful blows while screaming and begging White to stop. (*Id.* at 6–7, paras. 23, 25). White responded by spraying Norman with a chemical irritant. (*Id.* at 7, para. 24). As Norman finally made his way down a ladder onto the ground, White remarked that he should just throw Norman down because he "want[ed] to die anyway." (*Id.* at 7, para. 27).

A body chart documenting Norman's injuries showed bruising near his eye, head, and wrist. (*Id.* at 8, para. 28). For months after the incident, he reported blurred or double vision, constant headaches, and dizziness. (*Id.* at 8, para. 32). He also reported irritation from the chemical with which he was sprayed by White. (*Id.* at 8, para. 29).

B.     **The Conditions at Elmore and Calloway's Responsibilities**

Calloway, as Warden III of Elmore, was responsible for its operations and the safety and well-being of its inmates. (*Id.* at 12, para. 48). Norman alleges that ADOC officers customarily used excessive and unlawful force against inmates housed at Elmore and that the frequency of such uses amounted to a custom or policy. (*Id.* at 9, para. 42). In support, he alleges five previous incidents involving excessive force at Elmore over a roughly three-year span. On November 4, 2018, White struck an unarmed, non-threatening inmate in the

head with a baton and sprayed him with a chemical irritant. (*Id.* at 10, para. 43). There is no evidence that White was reprimanded for this assault. (*Id.*). In February 2019, an unidentified sergeant at Elmore punched, kicked, and struck an unresisting inmate nineteen times. (*Id.* at 10, para. 44). The same sergeant then struck another inmate three times, continuing to strike him as he laid helplessly on the floor. (*Id.*). Finally, on July 21, 2021, a lieutenant and sergeant separately struck handcuffed inmates with their batons. (*Id.* at 10, para. 45). During the February 2019 and July 2021 incidents, officers watched the attacks but failed to intervene. (*Id.* at 10, paras. 44–45).

## V. DISCUSSION

Norman brings two claims against Calloway pursuant to 42 U.S.C. § 1983, alleging that she (1) was deliberately indifferent to the risk of Norman being unlawfully attacked by ADOC officers at Elmore (Count II), and (2) failed to protect him by refusing to take reasonable measures to guarantee his safety in light of officer-on-inmate attacks at Elmore (Count III). Both claims assert violations of the Eighth Amendment. Norman also brings two state law claims against Calloway for wantonness (Count V) and the intentional infliction of emotional distress (Count VI).[3]

Calloway moves to dismiss all four claims against her. To the extent that she is sued in her official capacity, Calloway moves to dismiss those claims on grounds of Eleventh Amendment and sovereign immunity. As to the § 1983 claims against her in her

---

[3] Against White, Norman brings § 1983 claims of excessive force and deliberate indifference and state law claims for assault and battery, wantonness, and the intentional infliction of emotional distress. White responded to these allegations by affidavit. (*See* doc. 22).

5

individual capacity, Calloway argues that Norman fails to plausibly allege any such claim, and that she is entitled to qualified immunity. Finally, as to Norman's state law claims, Calloway asserts that Norman fails to allege facts supporting these claims, or, in the alternative, that she is entitled to state-agent immunity. The Court addresses each argument in turn, beginning with sovereign immunity.

A.   **Official Capacity Claims**

It is unclear from the complaint, or the parties' briefing, whether Calloway is sued in her official or individual capacity. "However, out of an abundance of caution," Calloway argues that any claim against her in her official capacity should be dismissed because "Eleventh Amendment immunity bars damages claims against ADOC directly or against its officials in their official capacities" and "Alabama law also bars state-law damages claims directly against State agencies such as ADOC and against State officials in their official capacities." (Doc. 24 at 5).

"[I]n the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. . . . This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citation omitted). "The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Id.* at 101 (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). Generally, "a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Id.* at 102. *Ex parte Young* provides an exception to the Eleventh Amendment immunity bar in "suits against

state officers seeking prospective equitable relief to end continuing violations of federal law." *Jones v. Buckner*, 963 F. Supp. 2d 1267 (N.D. Ala. 2013); *see also Ex parte Young*, 209 U.S. 123 (1908).

Additionally, state sovereign immunity, "which is provided by Article I, § 14 of the Alabama Constitution, prohibits actions against the State." *LeFrere v. Quezada*, 582 F.3d 1260, 1265 (11th Cir. 2009) (citations omitted). "State officers and employees, in their official capacities and individually, are [] absolutely immune from suit when the action is, in effect, one against the state." *Phillips v. Thomas,* 555 So. 2d 81, 83 (Ala. 1989).

Calloway is an employee of the ADOC, a state agency, and as such, to the extent she is sued for damages in her official capacity, the Eleventh Amendment bars the § 1983 claims against her and state sovereign immunity bars the state law claims against her. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (holding that the Eleventh Amendment bars federal damages actions against a State or State officials in their official capacity); *Ex parte Thomas*, 110 So. 3d 363, 367 (Ala. 2012) (holding that an ADOC official sued in official capacity was entitled to sovereign immunity on state law damages claim). Accordingly, to the extent any claim is brought against Calloway in her official capacity, those claims are due to be DISMISSED.

**B.     Counts II and III:  Qualified Immunity[4]**

Norman asserts that Calloway violated his Eighth Amendment right to be free from cruel and unusual punishment through (1) her deliberate indifference to the risk of inmates

---

[4] The Court analyzes these claims as brought against Calloway in her individual capacity.

7

being attacked by ADOC officers at Elmore (Count II), and (2) her failure to protect inmates from being attacked by ADOC officers at Elmore (Count III). Calloway argues that she is entitled to qualified immunity on such claims.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The doctrine protects from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013) (quoting *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002)). There is a two-step analysis to determine whether qualified immunity is available. "First, the defendant must show that she acted within the scope of her discretionary authority. Once the defendant has so shown, the plaintiff must show that the defendant violated the plaintiff's clearly established statutory or constitutional rights." *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995) (internal citations omitted).

A government official can prove she acted within her discretionary authority by showing her "actions were undertaken pursuant to the performance of [her] duties and within the scope of [her] authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir. 1981)). Norman does not dispute that Calloway was acting within her discretionary authority (doc. 28 at 9), and the Court finds that Calloway was acting within her discretionary authority as Warden III at Elmore.

Having found that Calloway was acting within her discretionary authority, "the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." *Smith ex rel. Smith v. Siegelman,* 322 F.3d 1290, 1295 (11th Cir. 2003) (citation omitted). To meet that burden, the Plaintiff must show that "the facts that he has alleged or shown make out a violation of a constitutional right" and that the "right at issue was 'clearly established' at the time of defendants' alleged misconduct." *Pearson*, 555 U.S. at 232 (citations omitted). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Id.* at 236. For qualified immunity purposes, a right may be clearly established in one of three ways. First, there may be "case law with indistinguishable facts clearly establishing the constitutional right." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009). Second, there may be "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right." *Id.* at 1292. And third, the law is clearly established when the defendant's conduct was "so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Id.* The Court proceeds to examine whether Norman has plausibly alleged a constitutional violation against Calloway in Counts II and III.

**1. Constitutional Violation**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. This prohibition requires prison officials to "take reasonable measures to guarantee the safety of the inmates," which encompasses "protect[ing] prisoners from violence." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). A prison

official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Id.* at 834. Plaintiffs have styled § 1983 actions under the Eighth Amendment in various ways, including "deliberate indifference" and "failure to protect."

To show a prison official was deliberately indifferent in violation of the Eighth Amendment, a plaintiff must show: (1) "that he suffered a constitutional deprivation that was, 'objectively, "sufficiently serious"'"; (2) "that the defendant was actually, subjectively aware that [her] own conduct caused a substantial risk of serious harm to the plaintiff"; and (3) that the defendant did not "'respond[] reasonably to the risk.'" *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (citations omitted).

To succeed on a failure to protect claim, a plaintiff must show: (1) that he was "'incarcerated under conditions posing a substantial risk of serious harm'"; (2) "that the 'prison official [had] a sufficiently culpable state of mind,' amounting to 'deliberate indifference'"; and (3) "causation—that the constitutional violation caused" his injuries. *Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021) (citations omitted).

As an initial matter, it is unclear to the Court that Norman's "deliberate indifference" claim in Count II and "failure to protect" claim in Count III are distinct, independent claims. Norman alleges in both Counts that Calloway knew there existed a substantial risk of officer-on-inmate attacks at Elmore and did nothing to alleviate that risk, leading to White attacking Norman on September 14, 2022. At the heart of both claims—and of Eighth Amendment violations generally, however styled—is deliberate indifference. Because Calloway's alleged deliberate indifference underpins both claims, the Court

proceeds by analyzing whether Norman has plausibly alleged that she was deliberately indifferent to a substantial risk of officer-on-inmate attacks at Elmore.

Norman fails to allege facts which would support an inference that Calloway was "actually, subjectively aware that [her] own conduct caused a substantial risk of serious harm to [Norman]." *See Wade*, 106 F.4th at 1261. Norman alleges that "ADOC officers customarily used excessive and unlawful force against inmates housed at Elmore" and points to five alleged incidents of officer-on-inmate violence over a roughly three-year period. (Doc. 9 at 9, para. 42). These alleged incidents involve severe, excessive uses of force by officers on inmates posing no threat of harm to them. It is reasonable to infer that Calloway knew of these incidents at Elmore based on her role there as Warden. *See LaMarca v. Turner*, 995 F.2d 1526, 1536–37 (11th Cir. 1993). It would be unreasonable to infer, however, that Calloway knew her failure to address officer-on-inmate violence posed a *substantial* risk of serious harm to Norman based on these five previous incidents over roughly three years. The Eleventh Circuit has stated that while "an excessive risk of . . . violence at a jail creates a substantial risk of serious harm," "'occasional, isolated attacks . . . may not constitute cruel and unusual punishment.'" *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005) (citation omitted).[5] Instead, to be actionable, conditions at a prison must be such that "violence and terror

---

[5] Here, and elsewhere throughout this Opinion, the Court cites cases discussing a substantial risk of serious harm in the context of inmate-on-inmate, rather than officer-on-inmate, violence in prison. The Court finds these decisions applicable and persuasive in this context. The focus of the inquiry is on the substantiality of the risk of violence generally to the plaintiff, not whether that violence is perpetrated by an inmate or an officer.

reign," *id.*, or "violence [is] the norm or something close to it," *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019).

Norman's allegation of five incidents over roughly three years is insufficient to support an inference that officer-on-inmate violence reigned or was something close to the norm at Elmore. *See Marbury*, 936 F.3d at 1234 (holding that fifteen stabbings at a prison over six years, a rate of 2.5 per year, is insufficient to show a substantial risk of serious harm); *see also Harrison v. Culliver*, 746 F.3d 1288 (11th Cir. 2014) (holding that thirty-three weapons incidents at a prison over four years is insufficient to show that violence and terror reigned); *Purcell ex rel. Estate of Morgan*, 400 F.3d at 1322 n.21 (holding that two to three serious fights over nine months cannot establish frequent and pervasive violence). Because Norman does not plausibly allege that he faced a substantial risk of serious harm from officer-on-inmate violence at Elmore, the Court cannot infer that Calloway knew her inaction on this issue posed a substantial risk to him.[6] Accordingly, Norman fails to plausibly allege a constitutional violation, so his Eighth Amendment claims against Calloway are due to be DISMISSED for this independent reason.[7]

---

[6] While Norman alleges that he ultimately fell victim to officer violence on September 14, 2022, his allegations are insufficient to show that, before the attack, the conditions were such at Elmore that he faced a substantial risk of such violence.

[7] Calloway crafts several arguments around the notion that Norman failed to plausibly allege supervisory liability. But as Norman points out, he "did not assert a cause of action for supervisory liability" against Calloway in his complaint. (Doc. 28 at 14). Instead, Norman seeks to hold Calloway liable for her *own* allegedly unconstitutional conduct, which he may do. *See Barefield v. Dunn*, 688 F. Supp. 3d 1026, 1065 (M.D. Ala. Aug. 22, 2023) ("[T]he Eleventh Circuit has repeatedly determined personal liability by asking whether a defendant, regardless of [her] supervisory status, demonstrated deliberate indifference to a substantial risk of serious harm, without analyzing the subordinate-action-causal-connection framework.").

## 2. Clearly Established Law

Even if Calloway's alleged conduct violated Norman's Eighth Amendment rights, it would not have been clear to a reasonable official in her position that her conduct was unlawful. In a qualified immunity analysis, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that [her] conduct was unlawful in the situation [she] confronted." *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal citation omitted). "The inquiry whether a federal right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Maddox*, 727 F.3d at 1121 (quoting *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012)). "At its core, the question is one of fair notice." *Terrell*, 668 F.3d at 1255 (quoting *Saucier*, 533 U.S. at 202).

Norman argues that "case law clearly require[s] that prison officials 'take reasonable measures to guarantee the safety of the inmates.'" (Doc. 28 at 16 (citing *Cox*, 15 F.4th at 1357)). This is true. But *Cox* does not speak to whether Calloway had "fair notice" that her alleged conduct here—inaction following five officer-on-inmate attacks over roughly three years—violated Norman's Eighth Amendment right to be free from cruel and unusual punishment. Norman cites several other cases which he claims clearly establish that "a warden could face liability under § 1983 predicated on [her] failure to take reasonable steps

13

in the face of a history of widespread abuse or [her] adoption of custom or policies which resulted in deliberate indifference." (Doc. 28 at 17 (citing *LaMarca*, 995 F.2d at 1539; *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985); *Bruce v. Wade*, 537 F.2d 850, 853 (5th Cir. 1976)[8])). These cases, however, do not clearly establish that Calloway's alleged conduct here violated Norman's Eighth Amendment rights. The Court explains why.

Each of Norman's cited cases failed to give Calloway fair notice that her actions violated Norman's constitutional rights. First, in *LaMarca*, the defendant prison superintendent was found to be deliberately indifferent to a serious risk of substantial harm from "[t]he presence of contraband (weapons, alcohol, drugs), corruption of [staff], inmate violence, and [sexual] activity" that were so common as to be "accepted as part of prison life." 995 F.2d at 1532. Here, conversely, Norman alleges one issue at Elmore, officer-on-inmate violence, with no supporting factual allegations to show that it was an issue so common as to be "accepted as part of prison life." Further, the *LaMarca* prison superintendent had notice of the harmful conditions not only from his position as a prison official, but also from incident reports, internal staff reports, and reports by external investigators, all of which addressed the harmful conditions at the prison. *Id.* at 1536. Here, Norman alleges that Calloway knew of substantial risk at Elmore solely through the five alleged prior incidents over three years, which she knew about through her position as

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.

14

Warden. *LaMarca* therefore did not put Calloway on notice that her conduct here violated Norman's Eighth Amendment rights.

Second, in *Fundiller*, the Eleventh Circuit evaluated whether the city defendant was subject to municipal liability for conduct of its officers which violated the Fifth and Fourteenth Amendments. 777 F.2d at 1442. Norman's constitutional claims rely on the Eighth Amendment, and he does not allege municipal, or even supervisory, liability. Even putting these differences aside, the allegations of misconduct in *Fundiller* are more egregious than Norman's here. There, the city was alleged to have acted with gross indifference to the conduct of its police officers, which included "repeated failures to follow police procedure, unnecessary use[s] of excessive force, roughness and shootings at the time of making arrests, intimidating during arrests and booking procedures, and drug trafficking." *Id*. The repeated and widespread nature of failures across multiple areas of policing differentiates *Fundiller* from this case, where Calloway is alleged to have taken no action in response to just five occurrences of one particular issue.

Finally, in *Bruce*, the Fifth Circuit held that "an unjustified beating at the hands of prison officials gives rise to a [§] 1983 action." 537 F.2d at 853. But Norman does not allege that Calloway unjustifiably beat him, nor does he allege that she bears supervisory liability for White's beating of him. These cases are thus materially different from the one at hand and did not provide Calloway with "fair notice" that her conduct violated Norman's Eighth Amendment rights. *See Terrell*, 668 F.3d at 1255.

Norman does not attempt to carry his burden of showing clearly established law by arguing that this case is one involving a "broad principle" or that Calloway's conduct was

15

"so egregious that a constitutional right was clearly violated, even in the total absence of case law." *See Lewis*, 561 F.3d at 1291–92. Calloway is thus entitled to qualified immunity on Norman's Eighth Amendment claims, which are due to be DISMISSED for this additional, independent reason.

**C.     State Claims: Wantonness and Intentional Infliction of Emotional Distress**

Norman brings state law claims of wantonness and intentional infliction of emotional distress, which Calloway argues should be dismissed for failure to state a claim.

**1. Wantonness**

"To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains." *T&J White, LLC v. Williams*, 375 So. 3d 1225, 1229 (Ala. 2022) (citation omitted). Norman claims that Calloway "recklessly disregarded the rights and safety of inmates, including [Norman], when she failed to take any corrective action to prevent officers from using unconstitutional uses of force despite the clear need to do so," and that she "knew or should have known" that Norman would be seriously injured as a result of her failure to act. (Doc. 9 at 18, para. 89). Calloway contends that Norman "fails to provide any facts to support his general allegations . . . [or] meet [the] elements necessary to show wantonness on the part of [] Calloway toward [] Norman." (Doc. 24 at 22).

There is some overlap between this claim and Norman's Eighth Amendment claims, as both require showing that Calloway acted with reckless, or deliberate, indifference. For

16

many of the reasons discussed *supra* Section V.B.1, the Court concludes that Norman fails to plausibly allege wantonness by Calloway. Norman alleges that Calloway omitted her legal duty to ensure the safety of inmates at Elmore. But her alleged inaction in response to five incidents of officer-on-inmate violence over roughly three years cannot support an inference that she omitted this duty, much less consciously or intentionally. As discussed above, Norman fails to plausibly allege that Calloway knew her inaction would further any substantial risk of serious harm to inmates at Elmore from officer-on-inmate violence. It is therefore difficult to infer that she "consciously and intentionally . . . omitted [her] known duty" to keep inmates safe "with *reckless indifference* to the consequences." *See T&J White, LLC*, 375 So. 3d at 1229 (emphasis added). This claim against Calloway is therefore due to be DISMISSED.

### 2. Intentional Infliction of Emotional Distress

To establish the intentional infliction of emotional distress, also known as the tort of outrage, a plaintiff must show "(1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it." *Ex parte Crawford & Co.*, 693 So. 2d 458, 460 (Ala. 1997). To satisfy the second element, a plaintiff must show "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* (quoting *Am. Rd. Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1981)). "The tort of outrage is an extremely limited cause of action." *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000). The Alabama Supreme Court has thus recognized it only in "extremely

limited" circumstances, including "wrongful conduct in the family-burial context," "barbaric methods employed to coerce an insurance settlement," and "egregious sexual harassment." *Id.* (citations omitted).[9]

Norman alleges that Calloway "recklessly, and with the intention of causing [Norman] severe emotional distress, engage[d] in extreme [and] outrageous conduct by failing to act altogether despite being noticed that inmates' constitutional rights were customarily violated by correctional officers at Elmore." (Doc. 9 at 19, para. 95). Norman further alleges that "[a]s a direct and proximate result of [Calloway's] actions, which were so outrageous in character and extreme in degree as to be utterly intolerable in a civilized community, [Norman] suffered extensive physical injuries and emotional distress." (*Id.* at 19, para. 97)

Norman's allegations are insufficient to state a claim against Calloway for intentional infliction of emotional distress. Norman's allegation that Calloway acted "with the intention of causing [him] severe emotional distress" is conclusory and unsupported by his factual allegations. He also fails to plausibly allege conduct from Calloway "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *See Ex parte Crawford & Co.*, 693 So. 2d at 460. Even if failing to take corrective action in the face of five incidents over roughly three years may have been unwise, or even negligent,

---

[9] "That is not to say, however, that the tort of outrage is viable in only the three circumstances noted in *Potts*." *Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011). Rather, these circumstances exemplify the high bar conduct must meet to be actionable under this tort.

Norman fails to plausibly allege that such inaction was extreme or outrageous in context. Given the "extremely limited" nature of this cause of action, and the examples cited by the Alabama Supreme Court, this Court finds that Norman's allegations of Calloway's misconduct fail to meet the high bar required to bring such a claim. *See Potts*, 771 So. 2d at 465. Accordingly, his intentional infliction of emotional distress claim against Calloway is due to be DISMISSED.

## VI. CONCLUSION

For the reasons stated above, and for good cause, it is

ORDERED that Calloway's motion to dismiss (doc. 23) is GRANTED and she is DISMISSED from this case.

All claims against White move forward.

DONE this 26th day of March, 2025.

        /s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE